UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMAINE HOLMES-REESE,<br><br>    Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | NO. CV 07-3909 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Romaine Holmes-Reese filed this action on June 15, 2007. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on July 3 and 5, 2007. On April 23, 2008, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The Court has taken the matter under submission without oral argument.

Having reviewed the entire file, the matter is remanded for proceedings consistent with this Opinion.

///

///

///

///

# I.
## PROCEDURAL BACKGROUND

On June 27, 2000, Holmes-Reese filed applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits, which the Commissioner denied. JS 2; A.R. 32. After a hearing on November 17, 2001, an Administrative Law Judge issued an unfavorable decision on November 29, 2001. A.R. 520-562, 56-61. On August 16, 2002, the Appeals Council vacated the decision and remanded the matter. A.R. 99-102. After another hearing on December 4, 2002, the same Administrative Law Judge issued an unfavorable decision on January 31, 2003. A.R. 563-630, A.R. 67-71. On August 29, 2003, the Appeals Council again vacated the decision and remanded the matter a second time. A.R. 134-137.

A different Administrative Law Judge ("ALJ") conducted a third hearing on March 23, 2004, at which Holmes-Reese, a medical expert ("ME"), and a vocational expert testified. A.R. 631-663. On June 22, 2004, the ALJ issued a decision denying DIB and partly granting SSI benefits with a disability onset date of October 31, 2001.[1] A.R. 23-33. Holmes-Reese requested review. A.R. 17. On May 23, 2007, the Appeals Council denied Holmes-Reese's request for review. A.R. 9-12.

This lawsuit followed.

# II.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal

///

---

[1] Because Holmes-Reese's last insured date was September 30, 2001, she was not entitled to DIB, only to SSI benefits. A.R. 32.

standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.
## DISCUSSION

### A.   Disability

"A person qualifies as disabled, and thereby eligible for such benefits, only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and internal quotation marks omitted).

### B.   The ALJ's Findings

The ALJ found that Holmes-Reese had severe depression and post-traumatic stress disorder. A.R. 32. Holmes-Reese's last insured date was September 30, 2001. *Id.* Holmes-Reese's disability onset date was October 31, 2001. A.R. 31. Before October 31, 2001, Holmes-Reese was "mildly limited in her ability to relate and interact with supervisors and co-workers, her ability to understand, remember and carry out complex or detailed job instructions, her ability to deal with the public, and in her ability to withstand the stress and

3

pressures associated with an 8-hour work day." *Id.* Based on these limitations, Holmes-Reese was capable of performing her past relevant work before October 31, 2001. *Id.*

As of October 31, 2001, Holmes-Reese had "moderate limitation (sic) in [her] ability to understand, remember and carry out complex or detailed job instructions, relate to co-workers, deal with the public, perform within a schedule, maintain regular attendance, be punctual and sustain work activities without special supervision and severe limitation in the ability to maintain attention and concentration, respond appropriately to changes in the workplace and complete a routine work day or work week without interruption from psychological symptoms." *Id.* Based on the Medical-Vocational Guidelines and the testimony of the vocational expert, Holmes-Reese was disabled as of October 31, 2001. A.R. 32.

As of January 1, 2002, Holmes-Reese's depression equaled the requirements of Listing 12.04. *Id.*

### C. Appeals Council Decision

On January 9, 2006, the Department of Veteran Affairs ("VA") issued a decision increasing Holmes-Reese's post-traumatic stress disorder from 30% disabling to 70% disabling effective August 25, 2000. A.R. 515. The VA also found that Holmes Reese was entitled "to individual unemployability . . . because the claimant is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." A.R. 517. Holmes-Reese transmitted the VA's decision to the Appeals Council. A.R. 15. In its denial of review, the Appeals Council considered the new evidence, but decided it did not provide a basis for changing the ALJ's decision. A.R. 9, 12.

If "new and material evidence is submitted," the Appeals Council "shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing

decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1470(b). The Appeals Council will then "make a decision or remand the case to an administrative law judge." 20 C.F.R. § 404.979. The Appeals Council "may affirm, modify or reverse the administrative law judge hearing decision." *Id.*

Given that the Appeals Council considered the new evidence in the context of denying review, this Court also considers the VA's decision. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir.), *cert. denied*, 531 U.S. 1038 (2000).

To warrant a remand on this issue, Holmes-Reese must show that the new evidence is material to determining her disability. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). To be material, the new evidence must bear "'directly and substantially on the matter in dispute.'" *Mayes*, 276 F.3d at 462 (citation omitted). In addition, Holmes-Reese must demonstrate "a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Id.*

"[A]n ALJ must ordinarily give great weight to a VA determination of disability . . . because of the marked similarity between these two federal disability programs." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). In *McCartey*, the Ninth Circuit remanded because the ALJ disregarded the claimant's VA disability rating. *Id.*

Here, the only issue is the onset date of Holmes-Reese's disability. The VA's decision appears to state that Holmes-Reese was disabled effective August 25, 2000. *See* 38 C.F.R. § 3.400(b)(2) (a claimant is entitled to disability compensation on the "date of receipt of claim, or date entitlement arose, whichever is later"). Holmes-Reese has shown that the VA's decision is new and
///

5

material evidence as to the onset date. On remand, the ALJ must consider this new evidence.

### D. Disability Onset Date

"[T]o obtain disability benefits, [a claimant] must demonstrate he was disabled prior to his last insured date." *Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991). "The burden of proof on this issue is on the claimant." *Id.*

If the "medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *DeLorme v. Sullivan*, 924 F.2d 841, 848 (9th Cir. 1991). "Mental disorders may manifest themselves over a period of time. Consequently, the precise date of onset of a disabling psychological impairment may be difficult, or impossible, to ascertain, and the services of a specialist may be necessary to infer the onset date." *Morgan*, 945 F.2d at 1081. The onset date must be "supported by the evidence." *See* Social Security Ruling ("SSR") 83-20,[2] available at 1983 WL 31249, *1; *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (" The question . . . is whether the onset date actually chosen is supported by substantial evidence, not whether another date could reasonably have been chosen.").

"[T]he date alleged by the individual should be used if it is consistent with all the evidence available." SSR 83-20, 1983 WL 31249, *3; *see Bowman v. Comm'r, Soc. Sec. Admin.*, 2001 WL 215790, *6 (D. Or. 2001) ("the presumption in SSR 83-20 that a claimant's testimony should generally determine the onset date of a disability"); *Manning v. Brown*, 717 F. Supp. 429, 432 (W.D.

---

[2] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989) (footnotes omitted).

Va. 1989) ("The ruling establishes a presumption in favor of the claimant"); *McConney v. Bowen*, 1988 WL 61139, *4 (N.D. Ill. 1988) (same).

Prior to the VA decision discussed above, Holmes-Reese alleged an amended onset date of July 16, 2000. A.R. 20.

The ALJ fixed the disability onset date as October 31, 2001. The ALJ relied on the ME who, according to the ALJ, testified that "the medical records were inconsistent with the conclusion . . . that the claimant had marked impairment in most areas of functioning prior to October 31, 2001." A.R. 29. In April 2001, Holmes-Reese's treating psychiatrist (Dr. Glick) did not find "marked or even moderate limitations in functioning." *Id.* The ALJ also stated that the medical records do not substantiate an earlier onset date than October 31, 2001. A.R. 30.

The ALJ misstates the ME's testimony. The ALJ states that the ME testified Holmes-Reese did not equal a listed impairment until January 2002. A.R. 29. Although the ME initially testified as to 2002 (A.R. 639), on cross-examination the ME revised the date to October 31, 2001. A.R. 644, 648. "[I]t's reasonable to assume, that, at least of October 31st, the date of this report, that she did meet or equal the listing as of that date onward." A.R. 644.

The ALJ also misstated the ME's testimony as to the onset date. The ALJ described the ME's opinion as stating that the medical records were inconsistent with marked impairment prior to October 31, 2001. A.R. 29. The ME, however, testified as follows:

> Q: Is there anything to indicate that the claimant's condition was less severe in September 2001 than it was in November of 2001?
>
> A: There is no evidence either way.

A.R. 649. The ME referred to the date of Dr. Glick's second assessment, October 31, 2001, as the onset date. However, the ME misread Dr. Glick's assessment. The Report contained the question, "[w]hat is the first date that

7

these limitations would be applicable?" A.R. 395.  Dr. Glick responded, "4/2001 to present."  *Id.*  Dr. Glick did not render a medical opinion applicable only as of October 31 2001.[3]

For this same reason, the ALJ misread Dr. Glick's assessment in finding that Dr. Glick did not find "marked or even moderate limitations in functioning" in April 2001.  A.R. 29.  Glick completed two different forms.  On April 9, 2001, Glick completed a Short-Form Evaluation for Mental Disorders.  A.R. 373.  The form asked the doctor to "provide a current assessment necessary to evaluate this patient's disability claim."[4]  *Id.*  Glick indicated that the assessment was based on Holmes-Reese's first and only visit to him.  *Id.*  Glick diagnosed Holmes-Reese with major depression and post-traumatic stress disorder.  *Id.*

On October 31, 2001, Glick completed a form entitled Mental Interrogatories.  A.R. 393.  Glick indicated that the "dates of service" were April 2001 to the present.  *Id.*  The Mental Interrogatories specifically asked the person completing the form to "evaluate the individual's capacity to sustain enumerated activity over a normal work day and work week, on an ongoing basis."  *Id.*  The possible answers to the first 20 questions (out of 25) were unlimited, not significantly limited, moderately limited, or markedly limited.  A.R. 393-395.  Of the 20 questions, Glick circled not significantly limited in response to 8; moderately limited to 9; and markedly limited to 3.  *Id.*  Glick said he based the limitations on "depression, sad mood, low energy, decreased concentration and

///

---

[3] The ME appears to have misspoken when he stated that Holmes-Reese suffered from a "depressive disorder" and from "post-traumatic stress disorder," but said that Glick's April 2001 diagnosis specified only "major depression."  A.R. 638.  The April 2001 diagnosis by Glick was for major depression *and* post-traumatic stress disorder.  A.R. 373.

[4] The form also stated in bold capital letters that it "may be used only when a prior evaluation and chart notes are available."  A.R. 373.  There is no indication that there was a prior evaluation or chart notes available.

memory, anhedonia,[5] feeling hopeless." A.R. 395. Glick concluded that Holmes-Reese would "have difficulty working at a regular job on a sustained basis." *Id.* In response to the question, "What is the first date that these limitations would be applicable," Glick wrote "4/2001 to Present." *Id.* Glick gave Holmes-Reese a "current" GAF of 45 and said the "highest" was 65.[6] A.R. 396.

Under these circumstances, the ALJ's statement that Glick did not find "marked or even moderate limitations in functioning" in April 2001 misstates the record. A.R. 29. Unlike the Mental Interrogatories, the April 2001 form contained no questions or responses using that terminology. A.R. 373-375. In response to the Mental Interrogatories, Glick wrote that the limitations he circled applied from April 2001 to the present. A.R. 395. At the very least, Glick's statement indicates that the degree of limitation did not suddenly appear on October 31, 2001. *See Morgan*, 945 F.2d at 1081 ("The significant date for disability compensation is the date of onset of the disability rather than the date of diagnosis.").

The ALJ's statement that medical records do not substantiate an earlier onset date than October 31, 2001 is, therefore, incorrect. In addition to Dr. Glick, the ALJ did not have the benefit of the VA decision discussed above. The Court notes that Freda McKeown, a therapist at the Vet Center, diagnosed Holmes-Reese with post-traumatic stress disorder, chronic; and major depressive disorder, recurrent, on September 27, 2000. A.R. 346. Holmes-Reese had been seen eight times at the Vet Center between July 16, 2000, and September 27, 2000. *Id.* McKeown noted that Holmes-Reese had "intermittent suicidal ideation

---

[5] Anhedonia is "a psychological condition characterized by inability to experience pleasure in normally pleasurable acts." Merriam-Webster Online Dictionary, available at http://www.merriam-webster.com/cgi-bin/dictionary?book=Dictionary&va=anhedonia.

[6] It is not clear from the records when Holmes-Reese received a GAF score of 65.

9

subsequent to depression with pervasive feelings of hopelessness,[7] extremely poor self-esteem, and feelings of worthlessness and inadequacy." *Id.* The ALJ did not address McKeown's findings in 2000, although the ALJ did address her findings in 2002. A.R. 30.

Accordingly, this matter is remanded for reconsideration of the onset date.

### E. Holmes-Reese's Credibility

"[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted). If the ALJ has not found that the claimant is a malingerer, her "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* (citation and quotation marks omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). Here, the ALJ did not find that Holmes-Reese was a malingerer.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*, 504 F.3d at 1035-36.

### 1. Step One of the Credibility Analysis

At Step One, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it

---

[7] This is consistent with Glick's finding in October 2001 that Holmes-Reese felt "hopeless." A.R. 395.

could reasonably have caused some degree of the symptom.' 'Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged.'" *Id.* (citations omitted); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).   The Court assumes that the ALJ implicitly made a finding favorable to Holmes-Reese on Step One.

### 2. Step Two of the Credibility Analysis

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

The ALJ found that Holmes-Reese's testimony "was generally credible but not to the extent she alleged an onset prior to October 31, 2001." A.R. 30.  The ALJ rejected Holmes-Reese's testimony for the reasons given in Section III.D above.  The ALJ did not identify what parts of Holmes-Reese's testimony were credible and which parts undermined Holmes-Reese's complaints.  The ALJ appears to have discounted Holmes-Reese's credibility based on the medical records.  A.R. 30.  Although it is a factor that the ALJ may consider, the absence of supporting objective medical evidence is not sufficient alone.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Given that this matter is being remanded to the Commissioner for further proceedings, and Holmes-Reese's credibility must be assessed in light of the entire record, on remand the ALJ may revisit the issue of Holmes-Reese's credibility in light of the entire record including the new evidence discussed above.

11

## F. <u>Lay Testimony</u>

Donna Thomas, a friend of Holmes-Reese, did not testify at the hearing before the ALJ. She did, however, complete a questionnaire. The ALJ did not mention that questionnaire in her decision. Although most of the cases concern a failure to consider lay witness testimony, remand is required under *Stout v. Commissioner*, 454 F.3d 1050 (9th Cir. 2006), which issued after the ALJ's decision in this matter. "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1056.

Donna Thomas completed Daily Activities Questionnaires on August 27, 2000 (A.R. 223-228); October 5, 2000 (A.R. 235-240); and April 12, 2001 (A.R. 253-258). Thomas's questionnaires offer observations of Holmes-Reese's behavior and demeanor during a time frame at issue in determination of the onset date. *Armstrong v. Commissioner of the SSA*, 160 F.3d 587, 590 (9th Cir. 1998) (where medical records or testimony is unhelpful, ALJ may explore "lay evidence including the testimony of family, friends, or former employers to determine the onset date"). Accordingly, on remand Thomas's comments must be considered by the ALJ.

///
///
///
///
///
///
///
///

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the matter is remanded for proceedings consistent with this Opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: September 2, 2008

_____
ALICIA G. ROSENBERG
United States Magistrate Judge